UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CALVIN FARMER,

            Petitioner,

vs.                                    Case No. 3:09-cv-1128-J-37JBT

SECRETARY, DOC, et al.,

            Respondents.

_____

**ORDER**

Petitioner is proceeding on a Second Amended Petition (Doc. #12) (Second Amended Petition).[1]  He filed a Memorandum of Law in Support of Second Amended Petition for Writ of Habeas Corpus (Doc. #13).  The Second Amended Petition challenges a 2005 state court (Duval County) conviction for armed robbery and resisting an officer with violence.  Respondents filed a Response to Order to Show Cause and Answer to Petition for Writ of Habeas Corpus (Doc.

---

[1] The Court found Petitioner complied with the one-year period of limitations under the Antiterrorism and Effective Death Penalty Act.  Order (Doc. #28).

#32) (Response) on December 19, 2011.[2]  They rely on a previously filed Appendix (Doc. #23).[3]

Petitioner filed his Response to Respondents' Reply to Show Cause Order Issued by This Honorable Court on Oct. 19, 2011 (Doc. #37).  See Order (Doc. #15).  Four grounds for habeas relief are raised, and the Court is mindful of its responsibility to address each ground, Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992); however, no evidentiary proceedings are required in this Court.[4]

## STANDARD OF REVIEW

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).  "By its terms [28 U.S.C.] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to th[re]e exceptions."  Harrington v. Richter, 131 S.Ct. 770, 784 (2011).  The exceptions are: (1) the state

---

[2] Although Respondents refer to the second amended petition for writ of habeas corpus, Response at 1, and they were ordered to respond to the Second Amended Petition, Order (Doc. #28 at 6), upon review, Respondents have actually responded to the Amended Petition (Doc. #4).  Similar grounds are raised in the Second Amended Petition, except with respect to a claim of ineffective assistance of appellate counsel (ground four of the Second Amended Petition).

[3] The Court hereinafter refers to the Exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Appendix.  Otherwise, the page number on the particular document will be referenced.

[4] An evidentiary hearing was conducted in the state court on ground one, a claim of conflict/ineffective assistance of counsel, of the Rule 3.850 motion.  Ex. X at 6-46.

court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts.  Id. at 785.

There is a presumption of correctness of state courts' factual findings unless rebutted with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This presumption applies to the factual determinations of both trial and appellate courts.  See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Ground One

The first ground of the Second Amended Petition is: "State Habitual Offender Sentence violates due process[.]" Second Amended Petition at 6.  In this ground, Petitioner raises a Fourteenth

Amendment claim asserting he was illegally sentenced under the Florida state habitual offender laws due to the state relying on a prior predicate conviction from the State of Virginia, received by Petitioner's brother.  Upon review of the record, prior to trial, the following transpired.  A Notice of Intent to Classify Defendant as an Habitual Felony Offender was filed on August 26, 2004.  Ex. C at 20.  The state intended to rely on two prior felony convictions: (1) grand larceny, on April 4, 2000, in the Circuit Court, County of South Hampton, Virginia, and (2) possession of cocaine, on February 10, 1992, in the Circuit Court, City of Newport News, Virginia.  Id.  An Amended Notice of Intent to Classify Defendant as a Habitual Felony Offender was filed on March 16, 2005; however, the Amended Notice was withdrawn on that date.[5] Id. at 181, 346.

A sentencing hearing was conducted on March 16, 2005.  Ex. C at 334-71.  Petitioner was represented by Mr. Richard Selinger at sentencing.  Id.  Once the state withdrew the amended notice of habitual felony offender status, the state announced that it would rely on the original notice.  Id. at 346.  The court asked defense counsel if the judgments and sentences had been reviewed with Petitioner, id. at 346-47, and Mr. Selinger responded

---

[5] The Amended Notice relied on two prior convictions: (1) grand theft auto, April 4, 2000, in the Circuit Court, County of South Hampton, Virginia, and (2) uttering a forged instrument, March 5, 2002, in the Circuit Court, City of Richmond, Virginia. Ex. C at 181.

affirmatively.  Id. at 347.  Mr. Selinger said Petitioner was the

same individual as that in the judgments and convictions.  Id.  The

court specifically inquired as to whether Petitioner agreed that he

is the same individual as referenced in the convictions.  Id.

Counsel responded:

> Yes, sir, and for the record that's for
> **grand larceny that he was convicted on April
> 4th, 2000, in South Hampton, Virginia, and the
> second one is for possession of cocaine,
> conviction date of February 10th, 1992 in
> Newport News, Virginia, and he will stipulate
> to both of those.**

Id. (emphasis added).

The court then asked Petitioner if he agreed that he is the

same person that was sentenced and adjudicated guilty in those two

cases.  Id.  Petitioner said yes.  Id.  The court encapsulated the

nature of the proceedings:

> What we are doing at this point is taking up –
> is holding our separate hearing on the State's
> original notice of intent to classify the
> defendant as habitual felony offender.  You
> have stipulated that the packages that relate
> to those convictions are Mr. Farmer.  I need
> to ask you whether either of you have any
> evidence that Mr. Farmer has received any
> relief from either of these two judgments and
> sentences by way of pardon, post-conviction
> relief or direct appeal.

Id. at 350.  Defense counsel responded in the negative as well as

the state.  Id.

The court concluded that Petitioner had the two requisite

prior felony convictions, with the most recent adjudication falling

within the five-year window preceding the date of the instant offense. Id. at 352. Petitioner was designated an habitual felony offender, and sentenced to thirty years on count one, and ten years on count three, to run concurrently. Id. at 369. The Judgment and Sentence were entered on March 16, 2005. Id. at 191-97.

Petitioner now asserts that the prior conviction for possession of cocaine from Newport News, Virginia, dated February 10, 1992, is actually a conviction his brother received from the State of Virginia. The Defendant named in the conviction is "Sean A. Farmer," with a date of birth of December 20, 1969.[6] Ex. K at 32. The court, at the sentencing proceeding, noted that, according to the PSI, Petitioner "has used twenty-one some odd names and half a dozen dates of birth and Social Security numbers." Ex. C at 346. Petitioner admitted that he had accumulated aliases in order to avoid prosecution, and said his actual date of birth was October 25, 1972. Id. at 354.

Respondents contend, and this Court agrees, that this ground, claiming an illegal sentence due to the state relying on a predicate conviction of Petitioner's brother, simply involves a

---

[6] It is noted that Petitioner's date of birth recorded on the Florida Department of Corrections' website is December 20, 1969. See http://www.dc.state.fl.us/ActiveInmates/detail. The Inmate Population Information Detail includes the alias of "Shawn A. Farmer." Id. On June 3, 2004, after Petitioner was arrested for the instant offense, he signed his name Shawn Farmer (with a date of birth of December 20, 1969). Ex. C at 72. On that same date, Petitioner signed his name C. Farmer. One of his co-defendants informed the police that Petitioner's name was Calvin Farmer, not Shawn Farmer. Id. at 101.

state court's interpretation and application of Florida law.   See
Response at 17-18.   Petitioner has presented a state law claim, not
a claim of constitutional dimension.   As a result, this ground
should be dismissed.

Since ground one presents an issue of state law that is not
cognizable in this proceeding, this ground cannot provide a basis
for habeas corpus relief.   In the alternative, Respondents contend
that the constitutional claim is unexhausted and procedurally
defaulted.   Response at 18.

There are prerequisites to a federal habeas review.   Recently,
the Supreme Court of the United States discussed the doctrine of
procedural default:

> Federal habeas courts reviewing the
> constitutionality of a state prisoner's
> conviction and sentence are guided by rules
> designed to ensure that state-court judgments
> are accorded the finality and respect
> necessary to preserve the integrity of legal
> proceedings within our system of federalism.
> These rules include the doctrine of procedural
> default, under which a federal court will not
> review the merits of claims, including
> constitutional claims, that a state court
> declined to hear because the prisoner failed
> to abide by a state procedural rule. See,
> e.g., Coleman, supra, at 747-748, 111 S.Ct.
> 2546; Sykes, supra, at 84-85, 97 S.Ct. 2497. A
> state court's invocation of a procedural rule
> to deny a prisoner's claims precludes federal
> review of the claims if, among other
> requisites, the state procedural rule is a
> nonfederal ground adequate to support the
> judgment and the rule is firmly established
> and consistently followed. See, e.g., Walker
> v. Martin, 562 U.S. ----, ----, 131 S.Ct.
> 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard
> v. Kindler, 558 U.S. ----, ----, 130 S.Ct.

> 612, 617–618, 175 L.Ed.2d 417 (2009). The
> doctrine barring procedurally defaulted claims
> from being heard is not without exceptions. A
> prisoner may obtain federal review of a
> defaulted claim by showing cause for the
> default and prejudice from a violation of
> federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
> 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012).

In addition, the Supreme Court, in addressing the question of

exhaustion, explained:

> Before seeking a federal writ of habeas
> corpus, a state prisoner must exhaust
> available state remedies, 28 U.S.C. §
> 2254(b)(1), thereby giving the State the
> "'opportunity to pass upon and correct'
> alleged violations of its prisoners' federal
> rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365,
> 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per
> curiam) (quoting <u>Picard v. Connor</u>, 404 U.S.
> 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)
> (citation omitted)). To provide the State
> with the necessary "opportunity," **the prisoner**
> **must "fairly present" his claim in each**
> **appropriate state court** (including a state
> supreme court with powers of discretionary
> review), thereby alerting that court to the
> federal nature of the claim. <u>Duncan</u>, <u>supra</u>,
> at 365-366, 115 S.Ct. 887; <u>O'Sullivan v.</u>
> <u>Boerckel</u>, 526 U.S. 838, 845, 119 S.Ct. 1728,
> 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (emphasis added). In

<u>Baldwin</u>, the Supreme Court recognized a variety of ways a federal

constitutional issue could be fairly presented to the state court:

by citing the federal source of law, by citing a case deciding the

claim on federal grounds, or by labeling the claim "federal." <u>Id</u>.

at 32.

Again, procedural defaults may be excused under certain circumstances: "[n]otwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice." Id. at 890 (citations omitted). In order for Petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S.Ct. 2639). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir.), cert. denied, 528 U.S. 934 (1999). However, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez v. Ryan, 132 S.Ct. at 1315.

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citation omitted), cert. denied, 538 U.S. 947 (2003). The fundamental miscarriage of justice exception is only available in

- 9 -

extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002).

Upon review, Petitioner did not raise a constitutional claim with respect to this ground in his Rule 3.800(a) motion, Ex. K at 1-4, in his Rule 3.850 motion, Ex. W at 73-74, nor on appeal of the denial of the Rule 3.850 motion.  Ex. BB at 18-21.  The claim is unexhausted and procedurally defaulted.  Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice will result if the claim is not addressed on the merits.  Thus, the Court will apply the state procedural bar to ground one.  As a result, this claim will not be addressed on the merits.

Of great import, Petitioner did not challenge this prior conviction at the sentencing proceeding.  Instead, he stipulated that the person in the prior conviction was indeed him.  Of course, the trial court had already recognized that Petitioner used a large number of names, birth dates, and Social Security numbers throughout his criminal history.  The court conducted an extensive inquiry as to whether the prior convictions were actually Petitioner's convictions.  Petitioner readily admitted that they were his prior felony convictions.

As the trial court noted in its denial of the Rule 3.800(a) motion, the matter could have, and should have been, litigated during the sentencing proceeding.  Ex. K at 5.  Furthermore, the

court found the question Petitioner raised in his post conviction motion did not go to whether Petitioner received an illegal sentence under Florida law.   Id.

Petitioner is not entitled to habeas relief on ground one of the Second Amended Petition.  Petitioner has raised a state law claim which does not present a claim of constitutional dimension. In the alternative, Petitioner failed to fairly present a constitutional claim in the state courts; therefore, the constitutional claim is unexhausted and procedurally defaulted. Finally, this claim has no merit as Petitioner stipulated that he was the individual sentenced and adjudicated in the prior felony offenses used for habitualization.

### Ground Two

Ground two of the Second Amended Petition is:  "Denial of Right to Conflict Free Counsel[.]" Second Amended Petition at 9. In this ground, Petitioner asserts he was denied his constitutional right to proceed to trial represented by standby counsel free from conflict.  Id.  Specifically, Petitioner asserts that prior to trial, he was appointed counsel who refused to investigate and pursue his alibi defense.  Id.  In this regard, Petitioner claims counsel failed to obtain exculpatory evidence by allowing the state to introduce photographs of the white shirt rather than requiring the actual shirt worn during the crime be produced at trial.  Id. Petitioner asserts he could have demonstrated to the jury that the state's evidence was inconclusive because the shirt did not fit

- 11 -

him. Id. Petitioner contends he was denied a fair trial when counsel stipulated to the state's evidence. Id. Petitioner also claims his counsel failed to move to sever his case from his co-defendant, and the co-defendant implicated Petitioner in the crime, contributing to the guilty verdict for Petitioner. Id.

Petitioner claims he was denied his constitutional rights under the Sixth and Fourteenth Amendments due to the performance of defense counsel. In order to sustain his conflict claim, Petitioner must show "that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980) (footnote omitted). A defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. Id. at 349-50. In order to establish the constitutional predicate and utilize the more lenient Cuyler standard, which presumes prejudice, Petitioner has to show "that his counsel actively represented conflicting interests." Id. at 350.

Here, Petitioner has failed to show that his counsel represented conflicting interests. See Response at 8-9. Instead, what he has shown is that Mr. Selinger planned to present a defense of abandonment, which he considered to be supported by the testimony of the victims of the robbery and the rendition of the offense provided by Petitioner. The Eleventh Circuit has recognized that "[c]ounsel has a constitutional, independent duty to investigate and prepare a defense strategy prior to trial."

- 12 -

Williams v. Allen, 598 F.3d 778, 792 (11th Cir. 2010), cert.
denied, 131 S.Ct. 906 (2011).  Based on the record, Mr. Selinger
satisfied this duty to investigate, develop and prepare a defense
strategy.

Shortly before trial, Petitioner decided he wanted to present
an alibi defense and requested to proceed *pro se* at trial.  "[A]
disagreement between counsel and client that arises when the
attorney's professional judgment dictates an action or strategy
different from that desired by his or her client does not
constitute a legal or ethical conflict of interest requiring the
appointment of new counsel."  Gonzalez v. State, 993 So.2d 55, 57
(Fla. 5th DCA 2008).  Indeed, the trial court, after conducting a
*Nelson* inquiry on February 10, 2005, decided that there was no
legitimate reason to discharge Mr. Selinger and appoint a different
attorney to represent Petitioner.  Ex. C at 300-10.

Petitioner raised his conflict/ineffectiveness claim in his
Rule 3.850 motion, and the trial court conducted an evidentiary
hearing on this particular claim.  In its Final Order Denying
Motion for Post-conviction Relief, the court found and concluded:

> Six days prior to the commencement of the
> trial herein, the Defendant moved the Trial
> Court to appoint him new trial counsel based
> upon allegations that he was receiving
> ineffective assistance from his lawyer.
> Thereupon, the Court conducted an appropriate
> inquiry pursuant to *Nelson v. State*, 274 So.2d
> 256 (Fla. 4th DCA 1973) and *Hardwick v. State*,
> 521 So.2d 1071 (Fla. 1988) (a "*Nelson*
> hearing").  The Court then determined that
> Defendant's trial counsel had not been

rendering ineffective assistance.   When the
Defendant then insisted that he wished to
proceed to trial without his attorney, the
Court next engaged in a full inquiry pursuant
to *Feretta v. California*, 422 U.S. 806 (1975).
During that hearing the Court properly advised
the Defendant that if he represented himself,
he would not be able to assert claims of
ineffective assistance of counsel for events
which happened at trial.[7]

Ex. W at 92-93.

The court continued:

Because matters relating to the effective
assistance of trial counsel were heard by the
original Trial Court, it appears that they are
now procedurally barred.   <u>See</u>, *Johnson v.
State*, 593 So.2d 206 (Fla. 1992).
Nonetheless, Defendant contends that he
received ineffective assistance of trial
counsel because his lawyer urged him to use an
"abandonment" defense rather than an "alibi"
defense at trial; because his lawyer did not
arrange for production at trial of a certain
shirt, which Defendant claims the assailant in
the commission of this crime wore, but which
would not fit him; and because his lawyer did
not move to sever his trial from that of his
co-defendant.

Defendant cannot now demonstrate any
basis upon which his trial could have been
severed from that of his co-defendant; much
less how he was prejudiced by any non-
severance.   The other matters raised by him
were clearly within his own control when he
conducted his own trial.

---

    [7] In <u>Faretta v. California</u>, 422 U.S. 806 (1975), the Supreme
Court decided that defendants have a right to represent themselves,
recognizing that "[i]f there is any truth to the old proverb that
one who is his own lawyer has a fool for a client, the Court . . .
now bestows a constitutional right on one to make a fool . . of
himself."   <u>United States v. Brown</u>, 393 Fed.Appx. 686, 695 (11th
Cir. 2010) (per curiam) (quoting <u>Faretta</u>, 422 U.S. at 838-39),
<u>cert</u>. <u>denied</u>, 131 S.Ct. 2975 (2011).

Ex. W at 93.

At the _Faretta_ inquiry, the trial court found that Petitioner was competent to waive his right to counsel, and his waiver was knowingly and intelligently made.  Ex. C at 328.  Mr. Selinger was discharged as counsel.  _Id_.  Mr. Selinger was re-appointed as standby counsel.  _Id_.  The trial court instructed Mr. Selinger that he was to be present, "but you're not to actively participate in it."  _Id_.  Prior to opening statements, the trial court asked Petitioner if he wished to proceed _pro se_, and Petitioner confirmed that he did not want Mr. Selinger re-appointed.  Ex. D at 139-40. Immediately thereafter, Petitioner, proceeding _pro se_, agreed that the pictures could come into evidence, including the picture of the white shirt (State's Exhibit 4).  _Id_. at 140-41, 290-91.

Based on the above, Petitioner elected to represent himself, and, as a result, agreed to suffer the consequences or inure the benefits of that self-representation.  Petitioner was fully warned that he could not claim ineffective assistance of trial counsel because his counsel was discharged prior to trial.  Upon review of the record, Mr. Selinger did not actively participate in the jury trial.  Thus, any claim that counsel was ineffective for failing to have the shirt admitted as evidence at trial and to pursue the alibi defense at trial has no merit.  It was up to Petitioner to present his case at trial as he was no longer represented by counsel.  Petitioner has only himself to blame for failing to

ensure that the white shirt was brought to trial and admitted into evidence. See Ex. X at 23.

At the evidentiary hearing, Mr. Selinger attested that the planned defense was going to be an abandonment defense. Ex. X at 26. Once the cases were not severed (a co-defendant moved for severance, but his request was denied by the trial court), Petitioner decided that he wanted to proceed with an alibi defense. Id. Defense counsel confirmed that he did not plan on submitting the white shirt into evidence as the planned defense included admission as to Petitioner's presence at the scene but abandonment of any improper deeds. Id. at 28. Counsel attested that he did not move for severance prior to trial because there were no grounds to support a request for severance. Id. at 32-33. He further testified that he was present at the trial, but "had no role or part in it." Id. at 29.

Petitioner did not present evidence at the evidentiary hearing in state court which adequately supported his claim of conflict. He did not show any link between the alleged conflict (counsel wanting to pursue an abandonment defense and Petitioner wanting to pursue an alibi defense) and his counsel's decision to forgo the alternative strategy of defense. Counsel attested that although he thoroughly investigated and planned to put on an abandonment defense, he could have gone forward representing Petitioner at trial with an alibi defense, although he advised Petitioner that he was uneasy about the last-minute change of defense based on the

fact, throughout counsel's period of representation, Petitioner had said he was present at the scene of the offense.  Id. at 33-34.

Under these circumstances, Strickland is the controlling legal authority.[8]  In light of all the circumstances, defense counsel's performance was not outside the wide range of professional competence.  Furthermore, Petitioner has failed to satisfy the prejudice prong of Strickland.  Upon review, there was no unreasonable application of clearly established law in the state court's decision to reject the ineffectiveness claim.  The decision was not contrary to clearly established federal law and was not based on an unreasonable determination of the facts.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, the Court recognizes that there is a strong presumption in favor of competence.  The presumption that counsel's performance was reasonable is even stronger when, as in

---

[8] Even assuming the more lenient Cuyler standard is applicable to this claim, Petitioner has failed to show counsel actively represented conflicting interests.  Furthermore, Petitioner has failed to show that counsel's performance was negatively affected by his decision to pursue the abandonment defense based on the witnesses' rendition of the robbery, the identification of Petitioner as one of the robbers, and Petitioner's ever-fluctuating account of the robbery (Petitioner was present, but it was meant to be an arranged theft or petit theft, with Tim-Tam's employees involved in the theft; Petitioner was present, but he abandoned any intent to commit a crime; Petitioner's son was involved, and Petitioner was not the individual in the white shirt; and Petitioner was completely innocent).  Apparently at one point, Petitioner's son admitted to Mr. Selinger that he was the robber, but then he recanted that admission.  Ex. X at 29-30.  Counsel discussed the alibi defense with Petitioner, but it was an "imperfect alibi," because the witnesses could not cover the entire period of the robbery.  Id. at 31-32.

- 17 -

this case, counsel is an experienced criminal defense attorney.[9] The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).

The trial court concluded that defense counsel was not ineffective for failing to seek a severance. Not only did the court find counsel's performance within the range of reasonably competent counsel, the court also found Petitioner failed to show prejudice because the court found Petitioner could not demonstrate any basis upon which his trial could have been severed.

---

[9] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000). Mr. Selinger had been a member of the Florida Bar since 1997. Ex. X at 35. Thus, at the time of the instant case, Mr. Selinger had been practicing criminal law for approximately eight years. He attested that he met with Petitioner at the jail, reviewed the police reports, spoke with Petitioner's witnesses, went through depositions and reviewed those depositions with Petitioner, conducted legal research, prepared for trial, and prepared Petitioner for trial. Id. at 35-36. Counsel explained that he was unable to locate witness Brenda Southwood, although his investigator attempted to find her. Id. at 38-39.

Even assuming deficient performance, Petitioner has not shown prejudice, as the trial court was convinced that the there was no basis to seek severance, and Petitioner was not prejudiced by the actions of counsel.   Thus, Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided. Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.

Finally, Petitioner represented himself at trial.   Thus, he was responsible for presenting his alibi defense at trial, including seeking the admission of the white shirt.   This he failed to do.   Although Petitioner seeks to blame standby counsel for the decisions Petitioner made at trial, standby counsel did not participate at trial and can not be held accountable for the actions or inactions of Petitioner at trial.

Petitioner is not entitled to relief on ground two of the Petition, the claim of ineffective assistance of trial counsel due to a conflict.   He did not establish an actual conflict of interest existed, and assuming *arguendo* he did establish such a conflict, he failed to demonstrate that the conflict adversely affected Mr. Selinger's representation.   Simply, "Petitioner has not shown that his Sixth Amendment right to counsel was violated due to a conflict of interest." Gilbrook v. Sec'y, Dep't of Corr., No. 5:10-cv-355-

Oc-10TBS, 2012 WL 1549994, at *5 (M.D. Fla. April 30, 2012).

Alternatively, deference under AEDPA should be given to the state court's decision. Petitioner appealed to the First District Court of Appeal, Ex. BB, and the appellate court per curiam affirmed on April 6, 2009. Ex. DD. The mandate issued on May 4, 2009. Ex. GG. The state courts' adjudication of this claim is not contrary to or an unreasonable application of Strickland or Cuyler or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground two.

### Ground Three

Ground three of the Second Amended Petition is: "Petitioner [was] denied [the] Sixth Amendment right to a fair trial by an impartial jury." Second Amended Petition at 12. In this ground, it is asserted that Petitioner was deprived of a fair trial by an impartial jury, in violation of the Sixth Amendment of the United States Constitution. Id. Petitioner alleges he was involved in a physical altercation at his workplace with one of the selected jurors, Mr. Carl Norman. Id. However, Petitioner did not recognize Mr. Norman during jury selection. Id. It was not until Petitioner's girlfriend brought Mr. Norman's identity to Petitioner's attention during the course of the trial that Petitioner realized he knew Mr. Norman. Id. Petitioner, proceeding pro se, did not bring the issue to the court's attention during the trial because "he could not recall specifically who Norman was" during the proceeding. Id. Petitioner alleges that

- 20 -

his girlfriend "refreshed his memory as to exactly who Norman was before the end of trial[.]"  Id.

The record shows that Petitioner waited until after the verdict was published to bring the matter to the court's attention.[10]  After the jury was polled and the court was excusing the jurors, Petitioner announced to the court that he knew Mr. Norman and explained that they had worked together.  Ex. D at 507. Mr. Norman responded that Petitioner's face looked familiar.  Id. Norman said he initially kept looking at Petitioner, but Petitioner's face "didn't ring a bell."  Id.  The court inquired as to whether there was anything about that familiarity that influenced Mr. Norman's verdict in the case.  Id. at 508.  The juror responded in the negative.  Id.

Petitioner raised this issue in his Rule 3.850 motion.  Ex. W at 70-72.  The trial court found that this claim "could have, and should have, been raised before the trial court; or on direct appeal."  Id. at 81.  The court concluded that the claim was procedurally barred from review.  Id.  The First District Court of Appeal affirmed.  Ex. DD.

Upon review, Petitioner did not present this claim in a procedurally correct manner.  Thus, it is procedurally defaulted. See Response at 14.  Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice will result if the claim is

---

[10] The jury found Petitioner guilty of armed robbery and resisting an officer with violence.  Ex. D at 502-503.

not addressed on the merits.  As a result, the Court will apply the
state procedural bar to ground three and not address the claim on
the merits.  Thus, ground three of the Second Amended Petition is
due to be denied.[11]

### Ground Four

The fourth ground of the Second Amended Petition is:
"Ineffective Assistance of Appellate Counsel."  Second Amended
Petition at 15.  Petitioner raises a claim of ineffective
assistance of appellate counsel for failure to raise a claim
concerning the trial court's denial of his motion to dismiss the
charging information.  Id.  Petitioner contends that the state
relied on the testimony of the investigating officer to charge the
crime, contrary to Florida law.  Id.  Petitioner asserts that the
investigating officer is not a material witness; therefore, the
information could not be based solely on his testimony.  Id.

Respondents did not address this claim of ineffective
assistance of appellate counsel in their Response.  In establishing
a claim of ineffective assistance of appellate counsel, there must
be a showing that appellate counsel's performance was so deficient

---

[11] Petitioner has failed to establish Mr. Norman was biased
against him.  See Response at 15-17.  Indeed, based on the record,
Petitioner and Mr. Norman did not recognize each other during jury
selection.  Petitioner said his girlfriend recognized Mr. Norman
during the trial, but Petitioner failed to bring the matter to the
court's attention until after the verdict was rendered.  In
addition, Petitioner has failed to demonstrate he was deprived of
a constitutionally fair trial as Mr. Norman assured the court he
did not recognize Petitioner's face and any vague familiarity with
Petitioner did not influence the verdict.

that it fell below an objective standard of reasonableness, but also, there must be a demonstration "that but for the deficient performance, the outcome of the appeal would have been different." Ferrell v. Hall, 640 F.3d 1199, 1236 (11th Cir. 2011) (quoting Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004)).

The record shows that Petitioner filed a *pro se* Motion to Dismiss the information on February 11, 2005.[12]  Ex. C at 46.  The trial court heard the motion on February 14, 2005.  Ex. E at 18-23. The state informed the court that Detective Parrott responded to the scene and conducted the show-ups.  Id. at 19.  Detective Parrott also conducted the interrogation.  Id.  The prosecutor described Detective Parrott as not only a material witness, but a key witness.  Id. at 19-20.  Detective Parrott was the affiant. Id. at 21.  The trial court found Detective Parrott's affidavit sufficient; "[t]he reports available to the State Attorney and the testimony of Detective Parrott were sufficient for the State Attorney to sign the information."[13]  Id. at 23.  With that finding,

_____

[12] As background, Mr. Selinger, on October 13, 2004, informed the court that Petitioner had asked him to file a motion to compel to gain the information the state relied upon, including the sworn statements relied upon in filing the information.  Ex. C at 219. Counsel did so, and the state provided him with the filing affidavit, which counsel found to be sufficient.  Id.  Petitioner disagreed with counsel's assessment, and requested counsel file a motion to dismiss the information.  Id.  Counsel informed the court that he did not believe it to be a valid motion, and he would not adopt it and file it with the court.  Id.

[13] The record shows that there was a sworn Arrest and Booking Report, dated June 3, 2004.  Ex. C at 1-5.  Also, multiple police reports were made, including a very detailed Supplemental Report by

the court denied the motion on February 14, 2005.  Id.; Ex. C at 51.

Petitioner was tried on an information dated June 16, 2004. Ex. C at 8-9.  Even if the information had been dismissed, the state would have simply cured the deficiency by filing a new information.  Petitioner has not, and cannot, allege the information fails to state a crime.  Therefore, the trial court was not deprived of jurisdiction.  The sworn oath of the prosecutor that he received testimony under oath from the material witness or witnesses for the offense is sufficient under Florida law.  Bromell v. McNeil, No. 07-61917-CIV, 2008 WL 4540054, at *17 (S.D. Fla. Oct. 10, 2008) (not reported in F.Supp.2d).  See Ruiz v. Sec'y, Dep't of Corr., No. 8:06-cv-2086-T-17TGW, 2008 WL 786327, at *4-*5 (M.D. Fla. Mar. 20, 2008) (not reported in F.Supp.2d) (rejecting a claim of ineffective assistance of counsel for failing to move for dismissal based on a deficient information, unsupported by a sworn statement of a material witness).  As explained in State v. Perkins, 977 So.2d 643, 646 (Fla. 5th DCA 2008), the assistant state attorney signing the information charging a felony does not have to personally administer the oath and question the material witness or witnesses upon which the charges are based, but simply receive and consider the sworn testimony.

_____

Detective Parrott, dated June 9, 2004.  Id. at 129-33.

This claim of ineffective assistance of appellate counsel was raised in a Petition for Writ of Habeas Corpus filed with the First District Court of Appeal. Ex. Q. Petitioner asserted the trial court erred in denying his motion to dismiss the information, and appellate counsel was ineffective for failing to raise this point on direct appeal. On July 18, 2007, the state appellate court denied the petition alleging ineffective assistance of appellate counsel on the merits. Ex. S. On July 20, 2007, Petitioner moved for leave to supplement the petition, Ex. T, and the motion to supplement was denied. Ex. U.

Two grounds were raised on direct appeal: (1) the trial court erred in denying the motion to suppress the out-of-court identification and in-court identification of Petitioner by witnesses Steinmetz and Compton, and (2) the trial court reversibly erred in overruling the defense objection to Ms. Steinmetz' testimony thereby allowing prejudicial irrelevant testimony to be presented to the jury. Ex. F at i. Appellate counsel's performance was not deficient for failing to include a claim that the trial court erred in denying the motion to dismiss the information. Such a claim would have been unsuccessful, as evidenced by the ruling of the First District Court of Appeal denying the Petition for Writ of Habeas Corpus. Furthermore, Petitioner has not met his burden to show that the outcome of the appeal would have been different if appellate counsel had raised this claim on direct appeal. Appellate counsel's performance did

- 25 -

not fall below an objective standard of reasonableness based on these circumstances.

The state court's refusal to grant relief on the basis of ineffective assistance of appellate counsel was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Finally, Petitioner has failed to demonstrate that, but for the alleged deficient performance of appellate counsel, the outcome of the appeal would have been different.   Therefore, ground four does not warrant relief.

### CERTIFICATE OF APPEALABILITY

If Petitioner appeals, the undersigned opines that a certificate of appealability is not warranted. <u>See</u> Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. §2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S.

322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Second Amended Petition (Doc. #12) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.   If Petitioner appeals the denial of his Second Amended Petition, **the Court denies a certificate of appealability**. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions

- 27 -

report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of June, 2012.

ROY B. DALTON JR.
United States District Judge

sa 6/4
c:
Calvin Farmer
Ass't A.G. (Heller)

- 28 -